**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | ) |
| | ) |
| DB CAPITAL HOLDINGS, LLC | ) Case No.   Case No. 10-23242 |
| | ) Chapter 11 |
| Debtor. | ) |

**MOTION TO DISMISS CASE COMMENCED WITHOUT**
**PROPER AUTHORIZATION AND IN BAD FAITH**

Aspen HH Ventures, LLC ("Aspen HH"), moves pursuant to section 1112(b) of the

Bankruptcy Code, 11 U.S.C. § 1112(b), to dismiss this chapter 11 case which was filed without

proper authorization and in bad faith.   In support hereof, Aspen HH states as follows:

1.      The Debtor, DB Capital Holding, LLC ("DB Capital"), is a Colorado limited

liability company which was formed to develop and sell a deeded fractional ownership

condominium project in Aspen, Colorado known as the "Dancing Bear Residences-Aspen" (the

"Project").   DB Capital is in default of its loan agreements with its mortgage lender, WestLB AG,

a German banking corporation ("WestLB").   The Project is subject to a state court receivership

instituted by WestLB in Pitkin County, Colorado.

2.      DB Capital has two members.   Aspen HH, an Illinois limited liability company, is

the Class A member of DB Capital and has a priority interest in all available cash from the Project.

The Class B member is Dancing Bear Development, L.P. ("DB Development"), a Colorado

limited partnership.   Aspen HH is informed and believes that the two partners in DB

Development are Thomas DiVenere ("DiVenere"), a Florida resident with a home (in foreclosure)

in Snowmass, Colorado, and Fred Funk, a professional golfer, who is DiVenere's neighbor in

Florida.

3.      The debtor, DB Capital, is managed by a third-party "manager," Dancing Bear

Management, LLC ("DB Management"), a Colorado limited liability company.   DB

Management has no membership or other interest in DB Capital, and is owned and controlled by DiVenere.

4.      On May 21, 2010, Aspen HH was granted leave to intervene in the pending receivership action previously filed by WestLB in the District Court in Pitkin County, Colorado. Aspen HH was also granted leave to file a Verified Cross-Complaint for dissolution and the appointment of a receiver for the Debtor, DB Capital and two of its affiliates, Dancing Bear Land, LLC and LCH, LLC.   A copy of the Verified Cross-Complaint filed by Aspen HH in the Pitkin County action is attached hereto as Exhibit A.

5.      In the Verified Cross-Complaint, Aspen HH alleged, among other things, that DiVenere, who had served as the de facto developer and manager of the Project, had misappropriated DB Capital's assets and mismanaged the Project in violation of the DB Capital Operating Agreement.   Aspen HH sought the appointment of a receiver to wind-up and liquidate DB Capital's business and affairs pursuant to the provisions of the Colorado Limited Liability Company Act.

6.      On May 27, 2010, the Honorable Gail H. Nichols, the District Court Judge presiding in the Pitkin County action, entered an Order, in response to an Emergency Motion filed that day by Aspen HH, scheduling an evidentiary hearing for June 9, 2010 on Aspen HH's motion for the appointment of a receiver, and enjoining any further attempts by DiVenere and his counsel from wrongfully taking possession of DB Capital's books and records. Copies of Aspen HH's "Emergency Motion for Injunctive Relief and Immediate Appointment of Receiver Pendente Lite Pursuant to § 7-80-812 of the Colorado Limited Liability Company Act," and Judge Nichol's May 27, 2010 Order, are attached hereto as Exhibits B and C, respectively.

7.      On the same day Judge Nichols entered the requested injunctive relief and scheduled the evidentiary hearing on Aspen HH's motion for the appointment of a receiver, DiVenere caused a chapter 11 petition to be filed in this Court on behalf of DB Capital.   For the reasons discussed below, this filing was wrongful, and this case should be promptly dismissed pursuant to section 1112(b) of the Bankruptcy Code, because (i) it was commenced by DiVenere without proper authorization by the members of the Debtor, and (ii) it was filed in bad faith and solely for delay in that DB Capital has no assets and absolutely no prospect for rehabilitation.

**This Case Was Commenced Without Proper Authorization**

8.      Although DB Capital is managed by a "manager" controlled by DiVenere, the manager's and DiVenere's authority to act in this circumstance is limited by the express terms of the Colorado Limited Liability Company Act (the "Act"), and DB Capital's Operating Agreement. Because neither the Act, the Operating Agreement, or the members of DB Capital authorized DiVenere to commence this chapter 11 proceeding, this case should be summarily dismissed.

9.      In *Price v. Gurney*, the United States Supreme Court held that, in the absence of a federal rule, the determination of whether a party had proper authority to commence a bankruptcy case must be based on local state law:

> "The District Court in passing on petitions filed by corporations under Chapter X must of course determine whether they are filed by those who have authority so to act.   In the absence of federal incorporation, that authority finds its source in local law."

324 U.S. 100, 104, 65 S.Ct. 513, 515 (1945).   After establishing that a court must look to local law to determine whether there was proper authority to commence a bankruptcy case, the Supreme Court explained what should occur when a court determines there was no such authority:

> "If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, ***it has no alternative but to dismiss the petition."***

3

*Id.* at 106, 65 S.Ct. at 516 (emphasis added).

10.     In *In re Yellow Cab Cooperative Association*, a Colorado federal district court

applied *Price* in resolving an "authority-to-file" issue with respect to an unincorporated

association, holding that:

> "Although *Price v. Gurney* is a pre-Code case, it is still good law.   Like in *Price v.
> Gurney*, cases decided under the Bankruptcy Code look to state law and
> instruments of incorporation to determine whether a petition is filed with proper
> corporate authority."

144 B.R. 505 (D. Col. 1992)(citations omitted); *see also In re Telluride Income Growth*

*Limited Partnership*, 311 B.R. 585, 590 (Bankr. D. Colo. 2004)("Cases decided under the

bankruptcy law look to state law to determine whether a petition is filed with proper

authority.")

11.     Although *Price*, *Yellow Cab* and *Telluride Income* concerned the

unauthorized filing of bankruptcy petitions by a corporation, an unincorporated association

and a limited partnership, respectively, various courts which have addressed the same issue

in the context of filings by limited liability companies have applied the same rules and

looked to state law to determine whether the filing was authorized and, if unauthorized, to

summarily dismiss the case.   *In re Midpoint Development, LLC*, 466 F.3d 1201, 1204

(10th Cir. 2006); *In re Real Homes, LLC*, 353 B.R. 221, 225 (Bankr. D. Idaho 2005);   *In re*

*Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Or. 2003); *In re Deluca*, 194

B.R. 79, 87 (Bankr. E.D. Va. 1996).

12.     In this case, this Court, consistent with *Price* and its progeny, should first look to

Colorado law to determine whether DiVenere, acting on behalf of DB Management, the manager

of DB Capital, properly commenced this action, without the knowledge or consent of Aspen HH,

DB Capital's sole Class A member.   In this regard, section 7-80-401(2)(c) of the Colorado Limited Liability Company Act expressly requires the consent of all members of a Colorado limited liability company in order to authorize any acts which are not in the ordinary course of the company's business.   Specifically, section 7-80-401(2)(c) provides:

"(2)    The consent of each member is necessary to :

\*    \*    \*    \*    \*    \*

(c) Authorize an act of the limited liability company that is not in the ordinary course of the business of the limited liability company."

C.R.S. § 7-80-401(2)(c).

13.    This provision of Colorado law, which requires that the members of a Colorado limited liability company, and not its manager, authorize acts on behalf of the limited liability which are not in the ordinary course of the company's business, certainly includes the extraordinary action of commencing a chapter 11 bankruptcy case.   See *In re Avalon Hotel Partners, LLC*, *supra* 302 B.R. at 380 ("A decision to file for bankruptcy protection is a decision outside the ordinary course of business, even for an entity in dissolution."); *In re Zaragosa Properties, Inc*., 156 B.R. 310, 313 (Bankr. M.D. Fla. 1993)("Certainly, filing a Petition for Relief under Title 11 is not in the ordinary course of anyone's business.").   This is particularly true where, as in this case, the manager of the limited liability company who commenced the bankruptcy action has been charged with misappropriation and other misconduct and was the subject of an action by one of the members to have the manager replaced by an independent third-party receiver.

14.     Moreover, even absent the express statutory prohibition which precluded DiVenere from taking the extraordinary action of filing a chapter 11 petition without Aspen HH's consent, the DB Capital Operating Agreement also prohibits such action on his part..

15.     Section 6.4(a)(i) and (ii) of the DB Capital Operating Agreement, a copy of which is attached hereto as Exhibit D, expressly provides that "the Manager shall have no authority without the prior written consent of all Members to: (i) do any act in contravention of this Agreement; [or] (ii) do any act that would make it impossible to carry on the ordinary business of the Company."     Paragraph (v) of a May 16, 2006 amendment to the DB Capital Operating Agreement, attached as Exhibit E hereto, expressly prohibits the filing of "a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy."

16.     Prior to filing the chapter 11 petition in this case, neither DiVenere nor DB Management sought or obtained the prior written consent of Aspen HH for the filing of a chapter 11 case.   The filing of such a petition was expressly prohibited by the DB Capital Operating Agreement, and was completely inconsistent with the ordinary conduct of the business of the company.

17.     Finally, when DiVenere executed the chapter 11 petition, he represented, under penalty of perjury, that "I have been authorized to file this petition on behalf of the debtor."     This representation is patently false.   There was no meeting of the members of DB Capital which was called to authorize the filing of a chapter 11 petition.   DiVenere did not seek and did not obtain the consent of Aspen HH to file the petition.   There is nothing in the DB Capital Operating Agreement or under Colorado law which authorized DiVenere or DB Management to take this extraordinary action without the knowledge or consent of all of DB Capital's members.   Under

6

the circumstances, DiVenere did not have the authority to commence this case and this Court "has no alternative but to dismiss the petition."

**This Case Was Commenced In Bad Faith**

18.     In addition to not being properly authorized to commence this case on behalf of DB Capital, DiVenere commenced the case for an improper purpose and without any prospect of rehabilitating the debtor.   As such, this case should be dismissed because it was filed in bad faith.

19.     As discussed above, DiVenere caused the chapter 11 petition to be filed on the same day that Judge Nichols entered an Order in the Pitkin County proceedings enjoining any further attempts by DiVenere and his counsel from absconding with the books and records of DB Capital, and scheduling an evidentiary hearing on Aspen HH's request for the appointment of a receiver based in part on DiVenere's misconduct.

20.     The list of creditors DiVenere filed with the chapter 11 petition shows that DB Capital has debts exceeding $60 million and no assets.[1]

21.     Pursuant to section 1112(b)(1) of the Bankruptcy Code, a court, except in unusual circumstances, must dismiss a chapter 11 case "if the movant establishes cause."   There are a number of grounds that constitute "cause" identified in section 1112(b)(4), including a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;" however, as most courts recognize, the grounds set forth in section 1112(b)(4) is not intended to be exhaustive.   *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); *In re Pacific Rim Investments*, LLP, 243 B.R. 768, 772 (Bankr. D. Colo. 2000).     17.

---

[1]   DiVenere did not file with the petition a statement of financial affairs nor all of the schedules of assets and liabilities required by 11 U.S.C. §521(1).   Accordingly, a Notice of Deficiency and Notice of U.S. Trustee's Standing Motion to Dismiss have been filed by the Clerk of the Court. Aspen HH, however, is acutely aware of DB Capital's current financial condition and represents to the Court that DB Capital has no assets, and no prospect of rehabilitation in a chapter 11 proceeding.

22.     For example, in addition to dismissing a case for one of the reasons enumerated in section 1112(b)(4), a court may also dismiss a chapter 11 case in its entirety for lack of good faith. As explained by Collier:

> "In addition to the listed grounds for dismissal, courts enforce a "good faith" prerequisite to bankruptcy filings generally, and apply equitable principles in analyzing the dismissal of a case.   Such principles may include halting a debtor's intended abuse of the judicial process and the purposes of the reorganization provision, limiting the equitable remedies of the Code to debtors and creditors with "clean hands," exercising the court's inherent power to dismiss collusive, sham or frivolous suits, and impeding debtors from avoiding trial of issues as framed in state court and to avoid state court sanctions.   A dismissal for lack of good faith also is appropriate where there is no realistic possibility of an effective reorganization, and it is clear that the petitioner merely sought to delay or frustrate legitimate efforts of secured creditors to enforce their rights."

1 Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual ¶ 301.12[3] (Matthew Bender, 3rd ed. rev.)

23.     The good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy courts as a general system of equity, and is designed to prevent the "abuse of the bankruptcy process, or the rights of others."   *In re Victory Constr. Co.*, 9 B.R. 549, 559 (Bankr. C.D. Calif. 1981).   Because the issue of good faith focuses on subjective intent, as one court recognized:

> "Generally, the facts surrounding good faith will be determined by circumstantial evidence.   It is unlikely the debtor will ever acknowledge its own bad faith; therefore one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case."

*In re Roxy Real Estate Co.*, 170 B.R. 571, 573 (Bankr. E.D. Pa. 1993).

24.     Some of the generally recognized indicia or "badges" of bad faith in commencing a bankruptcy case include the following: the debtor (i) has one asset, (ii) has no ongoing business or employees, (iii) lacks a reasonable possibility of reorganizing, (iv) filed the case to stop judicial

proceedings and (v) engaged in wrongful pre-petition conduct.   *In re Nursery Land Development, Inc*., 91 F.3d 1414, 1416 (10th Cir. 1996).

25.     Here, there are multiple "badges" of bad faith.   Initially, as discussed above, this case was commenced by DiVenere without authority and contrary to state law and the DB Capital Operating Agreement.   DB Capital has only one asset - its interest in the limited liability company which owns the real estate comprising the Project.   However, that real estate, and the entire Project itself, is subject to WestLB's superior lien rights and there is no equity in the Project.   As DiVenere's list of creditors shows, DB Capital is indebted to WestLB for more than $58 million. The Project consists of only one completed condominium building which includes only nine condominium units.   Only 45% of the deeded fractional interests in those nine condominium units have been sold.   A second 11-unit condominium building which was also to be part of the Project is nothing more than an incomplete steel structure which sits abandoned and blighted in the heart of downtown Aspen.   With listed debts exceeding $60 million, no assets, no employees, and no viable prospects, the suggestion that the Project can be saved, and DB Capital rehabilitated, is quite simply farcical.

26.     Moreover, it is undisputed that this case was commenced by DiVenere only after he was confronted with a state court proceeding concerning his own serious managerial misconduct and the potential for an independent third-party receiver to finally be appointed to take control of and wind-up DB Capital's business and affairs.   Although DiVenere's desire to avoid that outcome is understandable under the circumstances, it is not the proper basis for commencing a chapter 11 bankruptcy case, even if DiVenere had the authority to take such action (which he did not).   In short, this case involves a classic example of a bad faith bankruptcy filing and abuse of the bankruptcy process, and for this reason alone this case should be dismissed.

27.     In support of the foregoing, Aspen HH submits herewith the Declaration of Robert Harney, a copy of which is attached hereto as Exhibit F.

WHEREFORE, Aspen HH respectfully requests that the Court dismiss this case on the grounds that it was commenced without proper authorization and in bad faith.

Dated: June 3, 2010                         FAEGRE & BENSON LLP


By:____/s/ Elizabeth Flaagan____
      Elizabeth Flaagan, #22604
      Lawrence Bass, #29702
      Faegre & Benson LLP
      3200 Wells Fargo Center
      1700 Lincoln Street
      Denver, CO 80203-4532
      Phone: (303) 607-3694
      Facsimile: (303) 607-3600
      Email: eflaagan@faegre.com

      Counsel for Aspen HH Ventures, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of June, 2010, a true and correct copy of the foregoing **MOTION** was served by placing it in the United States Mail, postage prepaid thereon, and addressed to the following parties

### <u>COUNSEL:</u>

| | | |
|---|---|---|
| Robert Padjen | Representing | DB Capital Holdings |
| Laufer and Padjen | | 5290 DTC   Parkway201 |
| North Mill Street | | Suite 203 |
| Suite 150 | | Aspen, CO 81611 |
| Englewood, CO 80111 | | (Debtor) |
| 303-830-3173 | | |
| | | |
| Joanne C. Speirs | Representing | US Trustee |
| 999 18th Street | | 999 18th Street |
| Suite 1551 | | Suite 1551 |
| Denver CO 80202 | | Denver, CO 80202 |
| 303-312-7230 | | 303-312-7230 |

### <u>CREDITORS:</u>

| | |
|---|---|
| American Express | Dancing Bear Management LLC |
| A.E. Blue (93005) | 70 River Bend Road |
| P.O. Box 36001 | Snowmass, CO 81654 |
| Fort Lauderdale, NY 33336 | |
| | Fred Funk |
| Ballard, Sparh LLP | 24729 Harbourview Drive |
| 1225 17th Street | Ponte Vedra, FL 32082 |
| Suite 2300 | |
| Denver, CO 80202 | GDBS At Snowmass |
| | C/O Chafin Light Real Estate |
| Cappello Captial Corp. | Roaring Fork Club |
| 100 Wilshire Boulevard | 24398 Highway 82 |
| Suite 1200 | Basalt, CO 81632 |
| Santa Monica, CA 90401 | |
| | Klein, Cote & Edwards |
| Criag Hudson | 201 N. Mill Street |
| c/o Fidelitone, Inc. | Suite 203 |
| 1260 Karl Court | Aspen, CO 81611 |
| Wauconda, IL 60084-1094 | |

O' Bryan Partnership Architects
Main Street
Fisco, CO 80443

Shaw Builders - Mountainside
Airport Boulevard
Grand Junction, CO 81501

WestLB
1211 Avenue Of The Americas
New York, NY 10036

William Dennis
112 Newport Lane
Port Vedra, FL 32082

Pricewaterhousecoopers
10 10th Street
Atlanta, GA 30309

Causey Demgen & Moore
1801 California Street
Denver, CO 80202-2681

Pitkin County Treasurer
506 East Main Street Suite 201
Aspen, Colorado 81611

City of Aspen Utilities
130 South Galena Street
Aspen, CO 81611-1902

/s/ Carole L. Wilds
Carole L. Wilds

12